IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOANNA LYNN F.,[1]                          3:18-cv-00395-BR

          Plaintiff,                        OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.


**MERRILL SCHNEIDER**
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, OR  97293
(503) 255-9092

          Attorneys for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

────────────────────

          [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**RYAN LU**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2034

   Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Joanna Lynn F. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further administrative proceedings.

## ADMINISTRATIVE HISTORY

On July 15, 2013, Plaintiff protectively filed her

application for DIB benefits.  Tr. 16, 232.[2]  Plaintiff alleges a

disability onset date of October 4, 2011.  Tr. 16, 232.

Plaintiff's application was denied initially and on

reconsideration.  An Administrative Law Judge (ALJ) held

hearings on April 16, 2016, and September 6, 2016.  Tr. 16,

45-96.  Plaintiff and vocational experts (VE) testified at both

hearings.  Plaintiff was also represented by an attorney at both

hearings.

On December 5, 2016, the ALJ issued an opinion in which she

found Plaintiff is not disabled and, therefore, is not entitled

to benefits.  Tr. 16-39.  Plaintiff requested review by the

Appeals Council.  On January 9, 2018, the Appeals Council denied

Plaintiff's request to review the ALJ's decision, and the ALJ's

decision became the final decision of the Commissioner.

Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On March 6, 2018, Plaintiff filed a Complaint in this Court

seeking review of the Commissioner's decision.


### BACKGROUND

Plaintiff was born on December 14, 1966.  Tr. 37, 232.

_____

[2] Citations to the official transcript of record filed by
the Commissioner on August 10, 2018, are referred to as "Tr."

Plaintiff was 44 years old on her alleged disability onset date.
Plaintiff has at least a high-school education.  Tr. 37, 51.
Plaintiff has past relevant work experience as a grocery-store
baker, grocery-store cashier, and a quarry weigh-master.
Tr. 36, 51-53.

Plaintiff alleges disability due to extreme back and joint
pain, diabetes, heart condition, blood disorder, cellulitis,
depression, and high blood pressure.  Tr. 98-99.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 25-36.

## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden, a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than

one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012). The court may not substitute its
judgment for that of the Commissioner. *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA). 20 C.F.R. § 404.1520(a)(4)(i). *See
also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir.
2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. 20 C.F.R.
§ 404.1509, 404.1520(a)(4)(ii). *See also Keyser*, 648 F.3d at
724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  20 C.F.R.
§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

    If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§ 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

    At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

    If the Commissioner reaches Step Five, she must determine

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

### ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since October 4, 2011, Plaintiff's alleged disability onset date.  Tr. 18.

At Step Two the ALJ found Plaintiff has the severe impairments of "lumbar spondylosis; right sacroiliitis; mild bilateral hip osteoarthritis; left carpometacarpal (CMC) joint osteoarthritis, status-post surgical repair; right third trigger finger; history of right peroneal tendonitis; ischemic heart disease; history of coronary artery disease, status-post stent

times two; [and] diabetes mellitus." Tr. 18.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 23. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: can lift up to 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk for six hours in an eight-hour workday; cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, crouch, crawl, and kneel; can occasionally handle (grasp or grip) objects with her left hand without limitation; can frequently handle objects with her right hand without limitation; and can understand, remember, and follow simple instructions consistent with work classified at the Specific Vocational Preparation (SVP) level of 2. Tr. 23-24.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work. Tr. 36.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as telemarketer, usher, and furniture-rental consultant. Tr. 38. Accordingly, the ALJ found Plaintiff is not disabled. Tr. 38.

**<u>DISCUSSION</u>**

Plaintiff contends the ALJ erred when she (1) failed to provide clear and convincing reasons for rejecting the opinions of Tatsuro Ogisu, M.D., an examining physician, and Gregory Cole, Ph.D., an examining psychologist, and (2) failed at Step Five to identify substantial evidence in the record that shows Plaintiff could perform other work in the national economy.

**I.  The ALJ did not provide clear and convincing reasons for disregarding the opinions of Drs. Ogisu and Cole.**

Plaintiff contends the ALJ failed to provide clear and convincing reasons for rejecting the opinions of Drs. Ogisu and Cole regarding Plaintiff's limitations.

**A.  Standards**

"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).  Specifically, the court must "distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Garrison*, 759 F.3d at 1012. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* Although the opinion of a treating physician is entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a nonexamining physician. *Ryan,* 528 F.3d at 1198. "The weight afforded a nonexamining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (quoting 20 C.F.R. § 404.1527(d)(3)).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* Even when contradicted, a treating or examining physician's opinion is still owed deference and will often be "entitled to the greatest weight . . . even if it does not meet the test for controlling weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007). An ALJ can satisfy the "substantial evidence" requirement by "setting out a

detailed and thorough summary of the facts and conflicting
clinical evidence, stating his interpretation thereof, and
making findings." *Reddick,* 157 F.3d at 725. "The ALJ must do
more than state conclusions. He must set forth his own
interpretations and explain why they, rather than the doctors',
are correct." *Id.* (citation omitted).

### B.  Analysis

#### 1.  Dr. Ogisu's opinion regarding Plaintiff's standing/walking limitations.

On January 28, 2014, Dr. Ogisu performed a
consultative examination of Plaintiff at the request of the ALJ.
Tr. 60-61, 365-69. Dr. Ogisu found, among other things, that
Plaintiff could sit, stand, and walk "up to at least half the
time but less than 6 hours" in an eight-hour workday. Tr. 369.
He also indicated Plaintiff is capable of "standing and walking
combined for up to less than 6 hours." Tr. 369.

The ALJ assessed Plaintiff's RFC for light work
and concluded Plaintiff can "sit, stand, and walk 6 hours each
in an 8-hour workday." Tr. 23. The ALJ gave "some weight" to
Dr. Ogisu's opinion, "but only to the extent that it was
consistent with the overall evidence of record." Tr. 35. The
ALJ also stated Dr. Ogisu's opinion regarding Plaintiff's
limitations was based on Plaintiff's "unusual clinical

presentation during her examination, which was notably

inconsistent with her presentation to other treating and

examining clinicians"; was "inconsistent with his own clinical

findings"; and was "inconsistent with the [Plaintiff's] reported

activities."  Tr. 35.

### a.    Dr. Ogisu's opinion is supported by other evidence in the record.

The ALJ found Dr. Ogisu's opinion that Plaintiff

could only sit, stand, and walk for four to six hours a day was

inconsistent with other evidence in the record.  The ALJ did

not cite to any evidence in the record that contradicted

Dr. Ogisu's opinion.  In fact, the Court finds the record

supports Dr. Ogisu's opinion.

In February 2014 Martin Kehrli, M.D., a state-

agency consultant, opined Plaintiff could stand and/or walk for

a total of two hours in an eight-hour workday.  Tr. 105.  In

July 2014 Neal Berner, M.D., another state-agency consultant,

opined Plaintiff could stand and/or walk for a total of four

hours in an eight-hour workday.  Tr. 117.  In May 2016 Raymond

Nolan, M.D., an examining physician, indicated Plaintiff "should

be able to stand and/or walk less than two hours" in an eight-

hour workday.  Tr. 640.  In summary, Dr. Berner imposed

limitations at least equal to Dr. Ogisu's opinion regarding

Plaintiff's ability to stand and/or to walk, and Drs. Kehrli and Nolan imposed greater limitations than Dr. Ogisu on Plaintiff's ability to stand and/or to walk. Thus, the Court finds each of these doctors imposed limitations on Plaintiff's ability to walk and/or to stand that are greater than the limitations found by the ALJ.

Based on this record the Court finds Dr. Ogisu's opinion that Plaintiff was limited to standing and to walking combined for up to six hours was consistent with some of the medical evidence in the record, and the ALJ's opinion that Plaintiff could stand and/or walk for six hours in an eight-hour workday is not supported by substantial evidence in the record.

### b. Dr. Ogisu's Examination of Plaintiff.

The ALJ also stated Dr. Ogisu's opinion regarding Plaintiff's limitations was based on Plaintiff's "unusual clinical presentation during her examination, which was notably inconsistent with her presentation to other treating and examining clinicians." Tr. 640. Dr. Ogisu indicated:

> With toe walking, [Plaintiff] is unable to stay up on the right side. Heel walking is done a few steps at a time due to unsteadiness. She complains of lower back pain. Tandem walking is moderately unsteady and results in a loss of balance every few steps.

Tr. 367. To support his conclusion, the ALJ cited a July 2015

emergency-room record indicating Plaintiff "routinely ambulated
with a normal, steady, unassisted gate." Tr. 35, 602. A
nurse's note for that visit reflected Plaintiff walked "to and
from restroom, steady gait, tolerated well." Tr. 606. A single
incident showing Plaintiff was able to walk to the restroom,
however, does not provide clear and convincing support for the
ALJ's conclusion.

### c.   Dr. Ogisu's Clinical Findings.

The ALJ also stated Dr. Ogisu's opinion was
"inconsistent with his own clinical findings." Tr. 35. The ALJ
relied on Dr. Ogisu's observation that Plaintiff did not have
any difficulty getting on and off the examination table or
moving between sitting, standing, and supine positions. Tr. 35,
366.

Dr. Ogisu's opinion of Plaintiff's limitations,
however, was not based solely on Plaintiff's ability to get on
and off an examination table, but instead was based on his
objective examination and assessment of Plaintiff's entire
condition. Tr. 366-68.

### d.   Plaintiff's Activities.

Finally, the ALJ stated Dr. Ogisu's opinion was
"inconsistent with the [Plaintiff's] reported activities that

she took care of her two grandchildren, who were under age 7, every day for a full 18-month period until March 2015." Tr. 35. There is not any evidence in the record, however, to show that Plaintiff was required to stand or to walk in excess of the limitations assessed by Dr. Ogisu in order to care for her grandchildren. "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

In summary, on this record the Court concludes the ALJ erred when he rejected Dr. Ogisu's opinion regarding Plaintiff's standing and/or walking limitations because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

### 2. Dr. Cole's Opinion Regarding Plaintiff's Social Limitations.

On May 19, 2016, Dr. Cole performed a consultative psychological examination of Plaintiff. Tr. 626-35. Dr. Cole's examination was specifically requested by the ALJ "because there's nothing in the record from a treating source discussing psychological function." Tr. 50, 60-61. Dr.

Cole reviewed Plaintiff's medical records and diagnosed Plaintiff with Major Depressive Disorder (MDD), recurrent episode-severe; Post-Traumatic Stress Disorder (PTSD), without dissociative symptoms; and Panic Disorder.  Tr. 630, 634.  In the Medical Source Statement for the examination, Dr. Cole indicated Plaintiff would be moderately impaired in all types of social interactions and would be markedly impaired in responding appropriately to "usual" work situations.  Tr. 628.

The ALJ did not include any limitations in his evaluation of Plaintiff's RFC related to Plaintiff's interactions with others in the workplace even though he gave Dr. Cole's opinion "some weight."  Tr. 24,35.  The ALJ pointed out that Dr. Cole's examination was performed approximately five months after Plaintiff's date last insured, that Plaintiff's self-reported symptoms described to Dr. Cole were not reported to other treating providers or supported by other evidence in the record, and that Dr. Cole's assessment is inconsistent with his own clinical examination that showed Plaintiff had average immediate memory capability and above average delayed memory ability.  Tr. 21-22, 35.  The ALJ did not identify any inconsistency between Dr. Cole's assessed social limitations and his clinical findings.

The record, however, supports Dr. Cole's opinion regarding Plaintiff's interpersonal limitations. For example, a medical report in January 2015 notes Plaintiff became angry at a medical assistant, yelled at her, and threatened her because Plaintiff thought the medical assistant was "smirking" at her. Tr. 542. In July 2015 Plaintiff also received a referral for a mental-health assessment based on her tearful and anxious behavior during an emergency-room visit. Tr. 606. Plaintiff later received a mental-health assessment, which indicated a history of depression and anxiety due to the effects of past trauma and included a diagnosis of MDD and PTSD at that time. Tr. 608-10, 612. These records support Dr. Cole's assessment of Plaintiff's mental-health limitations.

Based on this record the Court concludes the ALJ erred when she rejected Dr. Cole's opinion regarding Plaintiff's mental-health limitations because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## II. The ALJ erred at Step Five when she determined Plaintiff could perform other work.

Plaintiff contends the ALJ erred at Step Five when she failed to identify substantial evidence in the record to show that Plaintiff could perform other work.

**A.    Standards**

As noted, if the Commissioner reaches Step Five, she must determine whether the claimant is able to do other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1).

**B.   Analysis**

**1.   The ALJ's Hypotheticals Posed to the VE.**

The ALJ posed hypotheticals to the VE at the second hearing.  The first hypothetical was based only on the physical limitations assessed in Plaintiff's RFC and did not include any limitation that Plaintiff only "can understand, remember, and carry out simple instructions consistent with work classified at SVP level 2."  Tr. 24, 86-87.  The VE testified a

person with the physical limitations identified by the ALJ could not perform Plaintiff's past work. Tr. 87. The VE, however, testified there were three jobs consistent with the ALJ's hypothetical: telemarketer, usher, and furniture-rental consultant. Tr. 88.

The ALJ added to her second hypothetical a limitation for occasional handling, fingering, and feeling. Tr. 90. The VE testified such a limitation would eliminate the telemarketer occupation, but it would allow work as a surveillance-system monitor and an election worker. Tr. 90-91.

In her third hypothetical the ALJ included the limitation to "understand, remember and carry out simple instructions in a setting that did not require public contact, [and] did not require teamwork." Tr. 91. The VE testified a person with this additional limitation would be able to perform only the surveillance-system monitor occupation. Tr. 91. The VE, however, specifically excluded the occupations of telemarketer, usher, and furniture rental-consultant based on the "no public contact" limitation. Tr. 92.

Based on Plaintiff's age, education, vocational background, and RFC, the ALJ concluded Plaintiff could perform other work that existed in significant numbers in the national

economy.  Tr. 37-38.  Specifically, the ALJ found Plaintiff could perform the occupations of telemarketer, usher, and furniture-rental consultant.  Tr. 38.

### 2. The ALJ Erred in Her Hypotheticals to the VE.

The Court has concluded the ALJ erred when she evaluated Plaintiff's RFC and disregarded Dr. Cole's opinion regarding Plaintiff's limitations as to social interaction and public contact.  The ALJ, therefore, erred when she determined Plaintiff could perform the jobs of telemarketer, usher, and furniture-rental consultant, which are jobs the VE testified Plaintiff would not be able to perform if she had limitations as to social interaction and public contact.

Plaintiff also contends the "simple instruction" limitation included in Plaintiff's RFC is in conflict with Reasoning Level 3 required for each of the positions identified by the ALJ except the usher occupation.  Plaintiff relies on the Ninth Circuit's holding in *Zavalin v. Colvin* that there is "an apparent conflict between the RFC to perform simple, repetitive tasks, and the demands of Level 3 reasoning."  778 F.3d 842, 847 (9th Cir. 2015).  Nevertheless, the Commissioner contends any error was harmless because "at least two of the occupations identified by the [VE] did not require more than SVP 2 level

work." The Commissioner, however, compares apples to oranges.

As a California district court has noted, Reasoning Level and

SVP are separate vocational considerations:

> Other courts decided that, contrary to the
> Commissioner's argument here, the SVP level in a
> DOT listing indicating unskilled work, does not
> address whether a job entails only simple,
> repetitive tasks. *See, e.g., Lucy v. Chater,* 113
> F.3d 905, 909 (8th Cir.1997); *Cooper v. Barnhart,*
> 2004 WL 2381515, at *4 (N.D. Okla. Oct.15, 2004);
> *Hall v. Barnhart,* 2004 WL 1896969, at *3 (D. Me.
> Aug. 25, 2004). A job's SVP is focused on "the
> amount of lapsed time" it takes for a typical
> worker to learn the job's duties. DOT at 1009.
> A job's reasoning level, by contrast, gauges the
> minimal ability a worker needs to complete the
> job's tasks themselves. As one court noted, "SVP
> ratings speak to the issue of the level of
> vocational preparation necessary to perform the
> job, not directly to the issue of a job's
> simplicity, which appears to be more squarely
> addressed by the GED [reasoning level] ratings."
> *Hall-Grover v. Barnhart,* 2004 WL 1529283, at *4
> (D. Me. April 30, 2004).

*Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005).

In this case the VE testified each of the

occupations identified by the ALJ, including surveillance-system

monitor and elections worker, had an SVP of 2 and the positions

were consistent with the RFC assessed by the ALJ. Although the

ALJ included the "simple instructions" limitation in the third

hypothetical, it appears the VE's response that a person could

perform only the surveillance-system monitor occupation was

based on the limitation of "no public contact." There was not, however, any discussion by the ALJ or the VE regarding the required Reasoning Level for each of the occupations identified.

Accordingly, in light of the Ninth Circuit's decision in *Zavalin* and because Reasoning Levels do not equate to SVPs, it is unclear whether a person with a limitation as to "simple instructions" could perform occupations identified by the ALJ that have a Reasoning Level of 3.

Based on this record the Court concludes the ALJ erred at Step Five when she found Plaintiff could perform the occupations of telemarketer, usher, and furniture-rental consultant.

## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for the calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would

serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence
> credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

As noted, the Court concludes the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for disregarding the opinion of Dr. Cole as to Plaintiff's social limitations. The ALJ also failed to include such limitations in her assessment of Plaintiff's RFC, failed to include such limitations when she posed her hypotheticals to the VE and when she determined Plaintiff could perform certain work in the economy, and failed to address the Reasoning Level

requirements of each occupation that she determined Plaintiff could perform.

The Court, therefore, remands this matter to the ALJ for further administrative proceedings consistent with this Opinion and Order.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

IT IS SO ORDERED.

DATED this 16th day of April, 2019.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge